IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PABLOS CAFÉ AND BAR LLC, | ) | |
| | ) | |
| Plaintiff, | ) | No. 24-cv-1770 |
| | ) | |
| v. | ) | Judge Jeffrey I. Cummings |
| | ) | |
| THE VILLAGE OF DOLTON, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Pablos Café and Bar, LLC ("Pablos") brings this action pursuant to 42 U.S.C.§1983 against defendants the Village of Dolton (the "Village"), Tiffany Henyard, in her capacity as the then-Mayor of the Village, and Lewis Lacey in his capacity as the (former) Deputy Chief of Police for the Village (collectively, "defendants").[1] Pablos brings claims for violations of its Due Process and First Amendment rights arising from defendants' alleged improper revocation of Pablos' liquor and business licenses. The Village has moved to dismiss Pablos' claims pursuant to Rule 12(b)(6) for failure to state a claim. (Dckt. #44). For the reasons set forth below, the Court grants the Village's motion to dismiss without prejudice and with leave to re-plead.

**I.    LEGAL STANDARD**

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell. Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable

---

[1] Pablos' original complaint also included claims against Village Clerk, Alison Key. However, in its amended complaint, Pablos is no longer pursuing claims against Key. Accordingly, the Court terminates Key as a defendant in this matter.

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering a motion to dismiss under Rule 12(b)(6), the Court construes "the complaint in the light most favorable to the [non-moving party] accepting as true all well-pleaded facts and drawing reasonable inferences in [the non-moving party's] favor." *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013). Dismissal of an action under Rule 12(b)(6) is "warranted only if no relief could be granted under any set of facts that could be proved consistent with the allegations." *Christensen v. Cnty. of Boone*, 483 F.3d 454, 458 (7th Cir. 2007).

When resolving a motion under Rule 12(b)(6), "in addition to the allegations set forth in the complaint itself," the Court may consider, "documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). Indeed, it is "well-settled in this circuit that documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [its] claim." *Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 895 (7th Cir. 2018) (cleaned up); *Kuebler v. Vectren Corp.*, 13 F.4th 631, 636 (7th Cir. 2021) (same, citing cases).

## II. BACKGROUND

The following relevant allegations are taken from Pablos' first amended complaint, (Dckt. #27), and the documents attached thereto.

Pablos is an Illinois limited liability company that operates a bar and restaurant in Dolton, Illinois. (*Id.* ¶4). The Village of Dolton is a home rule unit of local government that, "possesses the power to license, regulate and/or prohibit the sale of alcoholic beverages at retail within its boundaries." (*Id.* ¶5). Said powers include the power, by "general ordinance," to determine the

number, kind and classification of local liquor licenses issued within its political subdivision provided said power is not exercised inconsistently with the Illinois Liquor Control Act. (*Id*. ¶5) (citing 235 ILCS 5/4-1 (1992)).

At all relevant times, defendant Tiffany Henyard was the Mayor of the Village and the Local Liquor Control Commissioner, and defendant Lewis Lacey was the Deputy Chief of the Village of Dolton Police Department ("DPD"). (*Id*. ¶¶6–7). The Board of Trustees for the Village "is a governing body responsible for making decisions and setting policies at the local level regarding budgeting, local ordinances, licensing, land use planning, and overall community development, among others." (*Id*. ¶9).

Pablos began operating as a bar and restaurant on March 5, 2020. (*Id*. ¶11). Pablos held a Class D Village liquor license (the "Liquor License") and a Village business license (the "Business License") (collectively, the "Licenses"). (*Id*. ¶¶12–13). Section 3-3-7 of the Village Code states that a Class D license "[s]hall authorize the sale at retail and consumption of alcoholic liquor on the specified premises, only as an incident to a business, other than the sale of alcoholic liquor which is regularly licensed and operated as a business in chief or principal business of the owner." (*Id*. ¶15). Section 3-3-7 further states the total number of Class D Licenses "shall not exceed" eleven. (*Id*. ¶16).

On April 15, 2023, Pablos filed and attempted to pay for the renewal of its Liquor and Business Licenses, which were set to expire on April 30, 2023. (*Id*. ¶¶17). The Village accepted the renewal application for review. (*Id*. ¶18). "Consistent with historical practice and as affirmed through verbal communications with agents of the Village," Pablos was allowed to continue to carry on its business pending the issuance of the Licenses. (*Id*. ¶19).

In May 2023, one of Pablos' managers, George Mseeh, placed several telephone calls to

the Village to inquire about the status of the Licenses. (*Id*. ¶20). During those calls, representatives for the Village stated that Pablos' "license is in process" or "pending," or stated that "[the Village] will call you when it's ready." (*Id*.). The Village representatives never told Mseeh that there was any issue with the applications or that the Village was aware of anything that could impact Pablos' eligibility for renewal. (*Id*. ¶21). At the direction of a Village representative, Mseeh also contacted the Village administrator and the Village's law firm regarding the status of the Licenses but was unable to obtain any information. (*Id*. ¶¶22–25).

On July 5, 2023, the Village inspector called Mseeh and stated, "you need to clear the bar, the police are on the way to shut you down for not having a license." (*Id*. ¶26). Shortly thereafter, multiple DPD officers arrived (without any documents), shut down the bar "for not having a local liquor license", and advised Mseeh to contact Village Hall the next day. (*Id*. ¶¶27–29). Thereafter, Pablos filed an appeal of the closure with the Illinois Liquor Control Commission. (*Id*. ¶33). Ultimately, the bar remained closed from July 5, 2023 through October 3, 2023, when former DPD Chief Robert Collins contacted DPD to advise that Pablos could remain open while "they are waiting for their hearing." (*Id*. ¶34).

During the closure, and through November 2023, Mseeh attended each monthly Village Board meeting and asked about the status of Pablos' Licenses. (*Id*. ¶¶36-51). Each time, defendant Henyard advised Mseeh that the renewals were "pending" and would be issued once the Village's internal process was completed. (*Id*.). Notwithstanding these representations, Pablos alleges that Henyard "has a pattern and practice of non-renewing or moving to revoke Business Licenses and/or Liquor Licenses of her political rivals, those she views as disloyal, and/or those who did not donate to her mayoral campaign or foundation" (such as Pablos). (*Id*. ¶¶64–65). According to Pablos, Henyard was seeking to non-renew or revoke its Liquor

4

License: (1) so Henyard could issue the License to her cousin who was developing a commercial real estate project that required a license; (2) in retaliation for Pablos not donating to her campaign; and (3) so that Henyard could somehow profit from issuance of one of the Village's finite number of liquor licenses. (*Id*. ¶69).

In any event, on November 2, 2023, Pablos was served with a "Notice of Hearing on Revocation/Nonrenewal of Business License" (Case No. 2023 BL 10) and a "Notice of Hearing of Revocation/Nonrenewal of Liquor License" (Case No. 2023 LL 10). (*Id*. ¶¶53–54). The Notices were accompanied with identical charges alleging thirty-one incidents that the Village complained warranted the revocation of Pablos' Licenses, including calls to police for a drive by shooting, domestic disputes, medical calls, and noise complaints. (*Id*. ¶¶55–61).

On January 26, 2024, an administrative hearing was held on the charges to revoke or non-renew Pablos' Licenses, during which various DPD officers testified that they were called to Pablos multiple times a month (ranging from "several" to twenty). (*Id*. ¶¶82, 84). For his part, Mseeh testified that police were only called to Pablos ten to twelve times per year. (*Id*. ¶91). On February 20, 2024, the hearing officer issued identical recommendations to revoke Pablos' Liquor and Business Licenses. (*Id*. ¶¶92–93, 95). Specifically, the hearing officer found the officers' testimony to be credible, recommended that the Village had satisfied its burden of establishing that Pablos constitutes a public nuisance, and recommended revocation/non-renewal of the Liquor and Business Licenses. (Dckt. ##27-4, 27-5).

The Village Board meeting scheduled for February 19, 2024 was cancelled and, therefore, Pablos alleges that the Village Board did not vote on the recommendation to revoke the Business License. (*Id*. ¶104).[2] According to plaintiff, the Board would have voted against

---

[2] It is unclear how the Board could have voted on the hearing officers' recommendation to revoke the Business License at the February 19, 2024 meeting even if it proceeded because, according to Pablos, the

the recommendation based on the "common understanding" at that time that certain Village Trustees were loyal to Henyard and "the other four" adamantly opposed her agenda. (*Id*. ¶¶105–06). In the days following the cancelled Board meeting, the local Fox News station visited Pablos to ask questions about allegations that its Licenses were being held up for political reasons. (*Id*. ¶110).

On February 20, 2024, defendant Officer Lacey and other DPD officers allegedly followed the Fox News truck to Pablos and gave Mseeh a "Findings of Fact and Order," captioned with the Liquor License case number, and signed by Henyard as the Mayor of Dolton and the Local Liquor Control Commissioner. (*Id*. ¶113; Dckt. #27-6). The Order adopted and attached the hearing officer's recommendation, and "revoked and non-renewed" Pablos' Liquor License pursuant to Section 3-3-17 of the Village Code. (Dckt. #27 ¶¶113, 115, 117). That section provides, in relevant part, as follows:

> **REVOCATION OF LICENSE; APPEALS:** The President, as Liquor Control Commissioner, shall have the authority to revoke any license issued pursuant to this Chapter for any violation of any provision hereof, or for any misrepresentation of any material facts set forth in the application for the license, or for the violation of any State of Federal law or Village ordinance pertaining to the sale of alcoholic liquor.

(*Id*. ¶116).

DPD Officers also placed an orange closure sticker on the front door of Pablos, and Officer Lacey advised Mseeh that he would be arrested if he did not sign the revocation order or if anyone removed the closure sticker. (*Id*. ¶¶114, 118–19). The revocation order did not provide for any appeal rights and, as of the date of the filing of the amended complaint (July 11, 2024), "no formal vote ha[d] been taken by the Board regarding the Recommendation." (*Id*.

---

hearing officer's recommendation was issued a day later, on February 20, 2024. The copies of the hearing officer's recommendations attached to Pablos' complaint are not dated.

¶¶120–21). According to Pablos, the "Village may not revoke licenses, or shut down properties for lack of the same, without first receiving approval from the Village Board." (*Id.* ¶124).

In its first amended complaint, Pablos brings claims pursuant to 42 U.S.C. §1983 against all defendants for violation if its Due Process rights (Count I) and First Amendment retaliation (Count II).

### III. ANALYSIS

The Village now moves to dismiss Pablos claims against it arguing that Pablos: (1) fails to plead municipal liability under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978); and (2) for a number of reasons, fails to otherwise plead a violation of its due process rights. The Court begins and ends with the *Monell* issue and finds, for the following reasons, that Pablos has failed to properly allege a claim for municipal liability against the Village.

**A. Plaintiff has failed to plead municipal liability against the Village.**

There is no respondeat superior liability for municipalities under 42 U.S.C. §1983. *Ruiz-Cortez v. City of Chicago*, 931 F.3d 592, 598 (7th Cir. 2019). Instead, a municipality may be liable for a Section 1983 violation only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Spiegel v. McClintic*, 916 F.3d 611, 617 (7th Cir. 2019) (citing *Monell*, 436 U.S. at 694). For a *Monell* claim to survive a motion to dismiss, a plaintiff must plead facts that plausibly suggest that: (1) it was deprived of a constitutional right; (2) the deprivation can be traced "to some municipal action (i.e., 'a policy or custom'), such that the challenged conduct is properly attributable to the municipality itself"; (3) "the policy or custom demonstrates municipal fault, i.e., deliberate indifference"; and (4) "the municipal action was the

moving force behind the federal-rights violation." *Thomas v. Neenah Joint Sch. Dist.*, 74 F.4th 521, 524 (7th Cir. 2023), *quoting Spiegel*, 916 F.3d at 617. All requirements "must be scrupulously applied to avoid a claim for municipal liability backsliding into an impermissible claim for vicarious liability." *Bohanon v. City of Indianapolis*, 46 F.4th 669, 676 (7th Cir. 2022) (cleaned up).

A plaintiff can demonstrate municipal action (i.e., a policy or custom) under the second prong in one of three ways: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Spiegel*, 916 F.3d at 617; *Gonzalez v. McHenry Cnty., Ill.*, 40 F.4th 824, 829 (7th Cir. 2022). Here, although it was not entirely clear from the first amended complaint how Pablos intended to proceed, it argues in its response brief, (Dckt. #60), that it has properly alleged municipal liability on two distinct grounds: "(1) because the primary acts complained of were directed by an individual with policy-making authority; and, (2) that a series of acts committed by Village officials damaged [Pablos]." (*Id*. at 4). The Court disagrees.

To begin, at least as currently pleaded, Pablos has failed to sufficiently allege that Henyard was the "final policymaker" with respect to the non-renewal or revocation of both liquor and business licenses in the Village of Dolton. Indeed, as the Village argues, nowhere in its complaint does Pablos allege that Henyard was the final policymaker as to licensing. In fact, despite citing to the ordinance granting the Liquor Control Commissioner (here, Henyard) at least the right to revoke liquor licenses under certain circumstances, Pablos itself otherwise alleges, in direct contrast, that the "Board of Trustees for the Village is a governing body responsible *for making decisions* and setting policies at the local level" regarding, *inter alia*,

8

licensing; and that the "Village may not revoke licenses, or shut down properties for lack of the same, *without first receiving approval from the Village Board.*" (*Id.* ¶¶9, 120 (emphasis added)). The Court is not required to ignore these allegations even though they negate any plausible inference that Henyard is the final policymaker for *all* licensing at issue in this case. *See Williams v. Vill. of Dolton*, No. 23-CV-5670, 2024 WL 621660, at *5 (N.D.Ill. Feb. 14, 2024) (no final policymaking authority pleaded where plaintiff offered "no specific factual allegations to support a plausible inference" of such authority); *Connelly v. Cook Cnty. Assessor's Off.*, 583 F.Supp.3d 1142, 1149 (N.D.Ill. 2022) (same); *see also Slaney v. The Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001) ("[T]he court is not required to ignore facts alleged in the complaint that undermine the plaintiff's claims.").

Moreover, Pablos has failed to allege municipal action through a widespread practice that is so permanent and well-settled that it constitutes a custom or practice. "To succeed on that theory, [Pablos] must allege facts permitting a reasonable inference that the practice is widespread and that the specific violations complained of were not isolated incidents." *Thomas*, 74 F.4th at 524 (cleaned up). Allegations of "a few sporadic examples of an improper behavior" will not suffice. *Flores v. City of South Bend*, 997 F.3d 725, 733 (7th Cir. 2021). "While Federal Rule of Civil Procedure 8(a)—not some higher standard—applies to causes of action for municipal liability . . . when it comes to alleging a widespread policy or custom, the plaintiff must allege others were impacted by the same policy that caused his injury." *Big Woods BBQ LLC v. Moore*, No. 24 CV 11776, 2025 WL 1755727, at *3 (N.D.Ill. June 25, 2025) (cleaned up). "Where a plaintiff's allegations do not permit an inference that the violation was caused by a policy or practice that impacted others, courts have dismissed *Monell* claims at the motion to dismiss stage." *Id*. (citing *Walker v. City of Chicago*, 596 F.Supp.3d 1064, 1074 (N.D.Ill.

9

2022)).

Here, Pablos has failed to allege facts to permit a reasonable inference that the Village (as opposed to Henyard) has a widespread practice of improperly revoking or non-renewing business or liquor licenses for its own benefit and, even if it did, Pablos cites to no others impacted by that purported practice. While Pablos need not "identify every other or even one other individual" who similarly suffered as a result of the alleged municipal practice . . . [Pablos] must allege that its injury was the result of a practice that affected more than just [Pablos]." *Big Woods*, 2025 WL 1755727, at *3. Pablos failed to do so here.

Finally, the Court notes – as Pablos asserts – that municipal liability can also be demonstrated "by showing a series of bad acts and inviting the court to infer from them that the policymaking level of government was bound to have noticed what was going on and by failing to do anything must have encouraged or at least condoned, thus in either event adopting, the misconduct of subordinate officers." *Woodward v. Coor. Med. Servs. of Illinois, Inc.*, 368 F.3d 917, 927 (7th Cir. 2004). But here, Pablos attributes the majority of the alleged bad acts taken against him solely to Henyard, and further alleges that (1) the Board never voted on the hearing officer's recommendation to revoke the licenses; (2) the Board would have voted *against* the recommendation for revocation; and (3) it could have "also allege[d] that . . . the Village Board was powerless to stop Henyard." (Dckt. #60 at 8). These allegations weigh against a finding that the Village somehow acquiesced to Henyard's series of bad—but seemingly rogue—acts. *See Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 654 (7th Cir. 2021) ("In applying *Monell* and avoiding respondeat superior liability, one key is to distinguish between the isolated wrongdoing of one or a few rogue employees and other, more widespread practices.").

For all of these reasons, the Court finds that Pablos has failed to sufficiently plead *Monell*

10

liability and, as such, need not address the Village's remaining arguments. The Court notes, however, that should Pablos seek to amend its complaint consistent with this Opinion, it should take care to consider the additional issues raised by the Village regarding the propriety of its claims for violation of its Due Process rights. Of course, those claims currently remain standing as to defendants Henyard and Lacey who did not move to dismiss.

## CONCLUSION

For the foregoing reasons, the Court grants the Village's motion to dismiss (Dckt. #44). Pablos has requested leave to amend, and it is granted until October 17, 2025 to file an amended complaint, to the extent that it can do so consistent with this Memorandum Opinion and Order and the dictates of Federal Rule of Civil Procedure 11.

**DATE: September 26, 2025**

*[signature]*

**Jeffrey I. Cummings**
**United States District Court Judge**

11