**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| PABLOS CAFÉ AND BAR LLC, | ) | |
| an Illinois corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Case No.: 24-cv-01770 |
| THE VILLAGE OF DOLTON, a municipal | ) | |
| corporation, TIFFANY A. HENYARD, | ) | Hon. Jeffrey Cummings |
| in her capacity as Mayor of the Village of Dolton, | ) | |
| and LEWIS LACEY in his capacity as the Deputy | ) | |
| Chief of Police for the Village of Dolton, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS**
**THE VILLAGE OF DOLTON'S, TIFFANY HENYARD'S, AND LEWIS LACEY'S**
**MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

**INTRODUCTION**

Defendant the Village of Dolton's (the "Village") Motion to Dismiss asks this Court to resolve disputed factual and legal issues at the pleading stage. Plaintiff's Second Amended Complaint (the "SAC") plausibly alleges that the Village used municipal licensing authority as a political weapon, deprived Plaintiff of constitutionally required processes, and retaliated against protected speech.

Plaintiff Pablo's Café and Bar LLC ("Plaintiff" or "Pablo's") has alleged, among other things, that the Village and Tiffany A. Henyard, the Mayor of the Village and the Local Liquor Control Commissioner (hereinafter "Henyard"), deprived Plaintiff of its business by unreasonably and unlawfully interfering with the use of Plaintiff's Class D liquor license (the "Liquor License"), business license (the "Business License") (the Liquor License and Business License collectively

referred to as the "Licenses"), and Plaintiff's use of the property located at 1115 Sibley Blvd, Dolton, Illinois 60419 (the "Property").

The Village's motion to dismiss argues, among other things, that Plaintiff has failed to allege municipal liability against the Village, that Plaintiff does not have a property interest in the Licenses, and that post deprivation remedies are adequate.

Henyard and Lewis Lacey also filed a motion to dismiss. Their motion makes one claim – that Plaintiff's SAC should be dismissed based on the *Younger* Doctrine.

For the reasons set forth below, both Motions should be denied.

## ARGUMENT

## I.   PLAINTIFF HAS ALLEGED MUNICIPAL LIABILITY AND THEREFORE THE VILLAGE SHOULD NOT BE DISMISSED

The Village first argues that Plaintiff has failed to plead Monell liability. This argument ignores the detailed factual allegations in the SAC, employs flawed logic, and improperly asks the Court to draw inferences in the Village's favor.

### A.  Plaintiff Plausibly Alleges Henyard Was a Final Policymaker

It is well-established that when a particular course of action is directed by those who set municipal policy, the municipality is responsible under section 1983, even if the action in question is undertaken only once. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81 (1986). "The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." *Id*. at 481–82. Rather, such an official also must be responsible for establishing final government policy on a particular issue. *Id*. at 482–83 (finding that prosecutor who had authority to make final decision about warrantless entry into home was a policymaker for municipality). The determination of whether a person has policymaking authority is a question of state law, and is to

be decided by the court. *Id.*; *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989); *Kujawski v. Bd. of Comm'rs of Bartholomew County, Ind.*, 183 F.3d 734, 737 (7th Cir.1999). The court's inquiry is not whether an official is a policymaker on all matters for the municipality, but whether he is a policymaker "in a particular area, or on a particular issue" *Kujawski*, 183 F.3d at 738 (citing *McMillian v. Monroe County*, 520 U.S. 781, 785, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997)). Officials with final decisionmaking authority are deemed policymakers for Monell purposes. *See Pembaur*, 475 U.S. at 480; *City of St. Louis v. Praprotnik*, 485 U.S. 112, 134 (1988); *Jett*, 491 U.S. at 737.

When determining whether an official is a final decisionmaker the court may inquire into: (1) whether the official is constrained by policies of other officials or legislative bodies; (2) whether the official's decision on the issue in question is subject to meaningful review; and (3) "whether the policy decision purportedly made by the official is within the realm of the official's grant of authority." *Randle v. City of Aurora*, 69 F.3d 441, 448 (10th Cir.1995) (citing *Praprotnik*, 485 U.S. at 127). Also helpful is an examination of not only "positive law, including ordinances, rules and regulations, but also the relevant customs and practices having the force of law." *Mandel v. Doe*, 888 F.2d 783, 793 (11th Cir.1989) (finding that custom dictated that physician's assistant, and not supervising doctor, had final policymaking authority with respect to medical decisions made at road prison) (citing *Jett*, 491 U.S. at 722, 109 S.Ct. 2702); *Kujawski*, 183 F.3d at 737 ("Customary practices having the force of law may be considered as proof of delegation."). Finally, and importantly, ***whether an official is a final policymaker is a fact-intensive inquiry not suitable for resolution on a motion to dismiss***. *Valentino v. Vill. of S. Chicago Heights*, 575 F.3d 664, 676 (7th Cir. 2009) (emphasis added.)

Here, the SAC alleges that, under Village Code §§ 3-3-7 and 3-3-17, Mayor Henyard – acting as Local Liquor Control Commissioner – exercised final and unreviewable authority over

issuance, renewal, and revocation of liquor licenses. (SAC ¶¶ 11, 46, 150–154). Plaintiff further alleges that all Village employees were instructed not to act on business license renewals without Henyard's approval, that applications were intentionally left "pending" indefinitely at her direction, and that the Village Board provided no meaningful review. (*Id*. ¶¶ 64, 73–76, 119–120).

Plaintiff has alleged that Henyard was the final policymaker in a non-conclusory manner as evidenced by the fact that (1) by law, as liquor commissioner, Henyard must sign a liquor license in order for it to become effective, and is a reality evidenced by the fact that she had to be ordered to sign Plaintiff's Liquor License even after the Illinois Liquor Control Commission ("ILCC") ordered that the Liquor License be issued to Plaintiff; (2) under Village Code §§ 3-3-7 and 3-3-17, Henyard as the Mayor and as Local Liquor Commissioner exercises final and unreviewable policymaking authority over issuance, nonrenewal, and revocation of liquor licenses; and (3) Plaintiff's Business License did not issue because Henyard directed the Village administrators responsible for physically delivering the Business License not to issue it.

With respect to liquor licenses, beyond the fact that the fact that (pursuant to Village Code) Henyard as the Mayor and as Local Liquor Commissioner exercises final and unreviewable policymaking authority over issuance, nonrenewal, and revocation of liquor licenses, the fact that Henyard could (and did) refuse to sign Pablo's liquor license despite direction from the ILCC to do so illustrates the degree of policymaking authority that Henyard possessed. Moreover, the fact that resolution of the liquor license issue ultimately required a directive by the Circuit Court ordering Henyard to sign and issue the Pablo's license, further demonstrates that Henyard was the final policymaker with regard to liquor licenses.

With respect to business licenses, Henyard acted in a way that did not trigger the Village Board's ability or obligation to act on the Business License revocation (i.e., because directing

Village administrative personnel not to issue business licenses resulted in constructive revocation, as opposed to a revocation following an administrative hearing before a hearing officer concerning alleged violations, which would trigger the Board's ability to accept or reject that hearing officer's recommendation.) In other words, Henyard could damage Plaintiff through a method that, barring affirmative action by the Village Board, would not otherwise trigger Village Board action to potentially undo her actions. Put simply, in this context, the Village Code language regarding the Village Board's "authority" to ultimately "revoke" a business license does not negate that Henyard was the final policymaker with respect to business license issuance or renewal. The natural inference to be drawn is that, at least in Dolton, Illinois during Henyard's reign, Henyard was the final policymaker as it concerned business licenses; even if that reality was not contemplated when the Village Code was adopted. Public statements made by the current Dolton Mayor and Village Trustees confirm this.

These allegations are sufficient to plead final policymaking authority or, alternatively, ratification.

## B. Plaintiff Plausibly Alleges an Express Policy or Widespread Practice

Plaintiff alleges an express municipal practice of leaving renewal applications "pending" unless approved by Henyard and shutting down businesses based on that manufactured status. (SAC ¶¶ 64, 78, 155). Plaintiff further alleges similar treatment of other businesses, public complaints, lawsuits, and media reports placing the Village on notice. (*Id.* ¶¶ 143–149). At the pleading stage, these allegations plausibly support municipal liability. *McCauley v. City of Chicago*, 671 F.3d 611, 616-618 (7th Cir. 2011).

The Village does not meaningfully address many of Plaintiff's specific allegations. Instead, the Village has chosen to merely gloss over those allegations and repeat the arguments it asserted

in its motion to dismiss the First Amended Complaint in this case. The Village focuses on the language of the Village Code which states that the Village cannot revoke a business license without approval from the Village Board. What the Village fails to address, or even acknowledge, is that a failure to renew a license (either a business or liquor license, which are often linked), is effectively a constructive revocation of a license as a non-renewal or failure to sign a license does not trigger action by the Village Board (i.e., following a revocation hearing before a hearing officer which, in turn, would be voted on by the Village Board to ratify or reverse.) If the Village never acts to renew a business license (or give a reason for its nonrenewal), an action of the Village Board is never triggered. Likewise, when the local liquor commissioner refuses to sign a liquor license (even after the ILLC has ordered her to sign it) – itself not an affirmative revocation, but a mere failure to act – there is nothing for the Village Board to review.

> The Village argues that:

> Plaintiff also alleges the "Village engaged in a common practice of closing business without Board approval where the Village failed to act on license renewal applications and acted completely contrary to Village Code." [*Id.* at 155]. This statement contains numerous inherent contradictions, but ultimately affirms that the allegedly unconstitutional actions were taken contrary to established policy, and Monell liability cannot exist.

> The Village confuses and conflates "established policy" with the Village Code provision

stating that a business license may not be revoked without Village Board approval. To Plaintiff's knowledge, there was no "established policy" to automatically renew and issue business licenses to every business license holder. So, the notion that Village engaged in the common practice of closing businesses (by refusing to renew business license for the apparent purpose of jeopardizing liquor licenses) without Board approval does not conflict with the notion that Village Board approval is required (following an administrative hearing) to act on a hearing officer's recommendation to revoke and ultimately affirm that revocation per Village Code. The point is

that Village acted in a way (i.e., failing to issue business licenses) such that the Village Code would not be triggered (hence the allegation "contrary to Village Code.")

It matters not whether the Village Board (pursuant to Village Code) has the codified right to ultimately *revoke* business licenses; the fact of the matter, and which Plaintiff has alleged, is that the Village caused all licenses to remain pending – a constructive revocation that did not trigger the Village Board to act as it normally would following a recommendation issued by a hearing officer following a revocation hearing – as contemplated by the Village Code. In other words, the action of causing all licenses to remain pending *became the Village's established policy*, even if it ran counter to or conflicted with the spirit of the Village Code. Put another way, simply because a village is supposed to act in accordance with village code, does not mean that every allegation that demonstrates that that Village acted here in a way contrary to Village Code is rendered "inherently contradictory" as it respects Village "established policy." Village code does not necessarily define "established policy". Villages act in illegal ways pursuant to unconstitutional policy that effectively circumvents their own code. That occurred here, and the Village acted in a way that denied businesses within their Village of their constitutional rights. It does not necessarily follow that the Village acted "contrary to established policy."

The Village further argues:

Plaintiff's allegations that the Village caused "licenses to remain 'pending' without Henyard's approval, so that Henyard could misuse her office to punish her political rivals, those she views as disloyal, and/or those who did not donate to her mayoral campaign or foundation" [Id. at ¶ 78] and the Village stacked "the Village license renewal process employees and Village license disciplinary enforcement employees or counsel with Henyard loyalists who would defer to her directive and agenda without question or protest" [Id. at ¶ 95] also fail. ***These allegations sound in patterns or practices of former Mayor Henyard, not the Village, and are conclusions without any factual support.***

(emphasis added.)

It similarly matters not that the Village administrative personnel were presumably acting at Henyard's behest. That does not render the Village administrative personnel's acts "patterns or practice of former Mayor Henyard" as opposed to Village acts. The administrative personnel failed to issue licenses, which is ultimately a ministerial act that *a Village*, not an individual, engages in (or chooses not to do.) No matter how one defines the "Village" in this context, the fact remains that the Village failed to act in several meaningful respects based on Henyard's directives which resulted in damage to Pablo's. In any event, a finding of what constitutes the "Village" is, at least, an issue of fact and dismissal on the basis that the Village suggests is not appropriate at the pleadings stage.

To the extent that this Court is still not persuaded as to the sufficiency of Plaintiff's allegations at the pleadings stage, Plaintiff is prepared to further allege that: (1) Henyard installed Defendant Lewis Lacey as the Chief of police of the Dolton Police Department so that he would enforce her directives; (2) Henyard directed that DPD officers be paid exorbitant amounts of overtime while they were working as her private security or carrying out her directives in order to curry favor and buy their loyalty so that they would carry out her directive and then testify to mistruths during Village disciplinary hearings; (3) Henyard hand selected a Village administrative adjudicating officer who also served as her personal attorney to render Henyard's pre-determined rulings on Village license issues; (4) Henyard hand selected the Village attorney with whom she also had a conflicted relationship (in addition to the adjudicating officer) in order to fabricate and over exaggerate charges and manipulate witness testimony (especially the testimony of DPD officers) against Henyard's political and other enemies and then prosecute those charges so that the adjudicating officer would find in favor of Henyard's pre-determined outcome; (5) Henyard installed loyalists or threatened the jobs of existing Village employees at all levels of the Village

administration, including those in the licensing office and Village inspectors; and (6) subsequent statements by the Village Board regarding Henyard's misconduct.

In short, Plaintiff has alleged, or is prepared to allege, that Henyard controlled and directed all levels of the Village administration from the DPD to the chief of police, to administration offices and inspectors, and to the Village attorney and adjudicating officer to prosecute and render a decision decided by Henyard against her adversaries, and that all of those Village employees ultimately chose to fall in line.

## II.     PLAINTIFF HAS ADEQUATELY PLEAD A DUE PROCESS VIOLATION

The Village next argues that Plaintiff fails to plead a due process violation. That argument should be denied for several reasons.

### A.  Plaintiff Plausibly Alleges a Constitutionally Protected Property Interest

The SAC concerns renewal of Plaintiff's existing Licenses after timely application, payment, and repeated assurances the Licenses were "pending." (SAC ¶¶ 19–44). A legitimate claim of entitlement may arise where renewal of licenses is the normal procedure but denial occurs only for cause. *Club Misty, Inc. v. Laski*, 208 F.3d 615, 618–619 (7th Cir. 2000). ("An Illinois liquor license and licensee's interest in renewal are 'property rights' within the meaning of the due process clause, as license is revocable or nonrenewable only for cause, though such a license is not 'property' for most purposes." "Distinction between 'rights' and 'privileges' cannot conclude the constitutional issue of whether a license is property for due process purposes, and indeed has very little relevance to it.").

The Village effectively concedes that Plaintiff had a property interest in its Liquor License. Beyond that, Plaintiff has sufficiently alleged that, as a practical matter, the refusal to issue an annual business license effectively denies a business of its liquor license; in other words, the two

licenses are linked, a concept which the ILCC has recognized. *See also City of Wyoming v. Liquor Control Comm.,* 48 Ill.App.3d 404, 409 (3rd Dist. 1977)) (equating nonrenewal of a license with revocation).

Effective revocation of a liquor license (in which businesses undeniably have a property interest) through nonrenewal of a business's business license has become commonplace in municipalities. Municipalities can effectively revoke or non-renew liquor licenses by non-renewing business licenses; and, by pursuing that route of punishment, the municipalities avoid having to answer to the ILCC. In other words, municipalities can effectively revoke liquor licenses with impunity. That is precisely why the ILCC has pivoted in recent years and evolved its policies to exercise jurisdiction over appeals where municipalities have initiated enforcement actions against businesses to revoke their liquor license on the basis that those businesses were operating without a business license. The ILCC has, in effect, acted to eliminate the workaround devised by municipalities that seek to punish otherwise lawful businesses, much like Illinois courts have in the past. *Id.* ("This statute does not expressly require compliance with the procedural requirements when a local liquor control commissioner refuses to renew a local liquor license. However, it could not have been the legislative intent that a local liquor control commissioner be able to easily avoid the application of the statutory procedural requirements to license revocation by waiting for the license to expire and then refuse to issue a renewal license. For that reason, we interpret the term 'revocation' in Ill.Rev.Stat.1975, ch. 43, par. 149, to include the refusal to issue a renewal license.") So, whether or not courts in this jurisdiction have found a business license to be a property interest, municipalities should not be able to avoid claims for damages where, as here, those municipalities have used the unjustified non-renewal of a license to effectively shut a business down.

10

In any event, Plaintiff has plausibly alleged a due process claim with respect to, at least, revocation or nonrenewal of its Liquor License, and the Village does not deny that.

**B.  Plaintiff Plausibly Alleges Deprivation Without Due Process**

Plaintiff alleges that it was shut down without notice, without a hearing, and without appeal rights while its Licenses were deliberately and indefinitely caused to remain "pending." (SAC ¶¶ 27–55). This constructive revocation occurred months before any hearing. Because Plaintiff challenges an established municipal practice, the "random and unauthorized" doctrine does not apply. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436 (1982).

Even if post-deprivation remedies were relevant, Plaintiff plausibly alleges that the subsequent hearing was constitutionally deficient due to undisclosed conflicts, fabricated evidence, and a predetermined outcome. (SAC ¶¶ 101–133). A sham proceeding does not satisfy due process.

**C.  Plaintiff's Post-Deprivation Remedies are Inadequate.**

Contrary to what the Village argues, Plaintiff has not alleged that the unlawful acts which caused Plaintiff to be damaged were "random, unauthorized acts by state employees." Instead, Plaintiff has alleged a targeted campaign, orchestrated by Henyard, to deprive Plaintiff of its Liquor License so that Henyard can then give Plaintiff's Liquor License to one of her supporters and/or associates, Kamal Woods. Plaintiff has also alleged that Henyard essentially stacked the deck against Plaintiff by using her personal attorney(s) and/or associates (not the Village's current counsel) to prosecute and render a decision regarding Plaintiff's Licenses. No reasonable interpretation of that conduct could construe the acts as "random"; rather, they were undeniably pre-determined and done in furtherance of Henyard's goals.

In any event, state administrative and/or ILCC review does not, and could not, grant Pablo's what it seeks through this proceeding – monetary damages. The ILCC is authorized to grant limited relief – the issuance of a license – relief that does not include monetary damages. And, because Pablo's prevailed in its appeal to the ILCC, there was nothing for it to appeal to the Circuit Court to review. Here, Pablo's prays for damages to compensate it for alleged constitutional violations; the ILCC cannot award those damages, let alone even entertain those claims.

Moreover, the Village utterly fails in establishing that Plaintiff had adequate post-deprivation remedies that it could have, but failed to, pursue to remedy the revocation of either the Business License or Liquor License.

### 1. Plaintiff's Business License

Plaintiff had no ability to pursue *any* remedy, let alone an adequate remedy, following the hearing officer's decision to revoke its Business License. Plaintiff has alleged, and the Village acknowledges (as it must), that the procedural prerequisite – a vote by the Village Board to ratify the hearing officer's decision – that would have triggered Plaintiff's right to appeal the revocation and/or non-renewal of Plaintiff's Business License pursuant to the Illinois Administrative Review Act, never took place. In other words, because the decision to revoke Plaintiff's Business License was never voted on by the Village Board, the Business License was never actually revoked through a final decision; it was effectively non-renewed for an indefinite, drawn out period of Village inaction. Plaintiff therefore had nothing to appeal and had no method to seek to remedy the Village's deprivation. As no method of a post-deprivation remedy was ever afforded Plaintiff, the Village's Motion cannot succeed on that basis.

12

### 2. Plaintiff's Liquor License

Plaintiff similarly had no ability to fully remedy Henyard's revocation of the Liquor License. As is commonly known, the ILCC is unable to award monetary damages to compensate Plaintiff for lost revenues during the period in which Plaintiff was unlawfully closed. Plaintiff here does in fact seek compensatory and other damages. And, though the ILCC ultimately ordered Henyard to sign and issue Plaintiff's local liquor license (which Henyard did not comply with), the fact remains that the ILCC's jurisdiction is limited to orders concerning liquor licenses themselves; the ILCC importantly lacks the authority to order compensatory damages to remedy appellants who had their liquor licenses unlawfully revoked. Therefore, the only post-deprivation remedy available to Plaintiff concerning the revocation of its Liquor License was undeniably inadequate, and the Village's Motion accordingly must be denied.

### III. PLAINTIFF HAS ADEQUATELY PLED A FIRST AMENDMENT RETALIATION CLAIM

Finally, the Village argues Plaintiff fails to plead First Amendment retaliation. The SAC plausibly alleges all required elements. Plaintiff engaged in protected activity by speaking with the press about governmental misconduct and refusing to support a political campaign. (SAC ¶¶ 82, 125–126). Plaintiff suffered adverse action sufficient to deter protected speech, including closure of its business, revocation of its Licenses, and threats of arrest. (*Id*. ¶¶ 128–132). Plaintiff plausibly alleges causation through proximity in time and direct police involvement immediately following press activity. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009).

### IV. HENYARD'S AND LACEY'S CLAIM THAT THE YOUNGER DOCTRINE COMPELS DISMISSAL SHOULD BE ROUNDLY REJECTED.

Henyard and Lacey seek dismissal on a sole ground – that this matter should be stayed pursuant to the *Younger* Doctrine because "Plaintiff fails to indicate if or how this [ILCC] appeal

was resolved." (Dkt. 37, Henyard Response, p. 2) Not only is that contention inaccurate as a factual matter, but Henyard's and Lacey's contention that that Plaintiff's complaint does not allege that the ILCC issued a final determination is similarly inaccurate. (*See* Second Amended Complaint ¶ 159.) Moreover, ***Plaintiff attached that final order to the Amended SAC***. (*See* ILCC Opinion and Order, attached to the Amended Complaint as Exhibit G.) In any event, the ILCC has in fact entered a final determination, which the Court may take judicial notice of. Categorically, Henyard's and Lacey's sole argument must be rejected.

Even if that were not the case, neither Henyard nor Lacey moved to dismiss the First Amended Complaint, both filed an answer, and both answered some discovery. That constitutes waiver.

## CONCLUSION

The SAC plausibly alleges constitutional violations and municipal liability. Moreover, the Younger Doctrine has no application here, and in any event Defendants Henyard and Lacey have waived any arguments concerning dismissal. As such, the Village's Motion to Dismiss as well as Henyard's and Lacey's Motion to Dismiss should be denied in their entirety.

Pablo's Café and Bar LLC

*s/Alex Kosyla*
One of Its Attorneys

Daniel T. Fahner
Alex Kosyla
Fahner Rosenberg PLLC
d/b/a RKF Global PLLC
555 Skokie Blvd, Suite 450
Northbrook, Illinois 60062
312-888-2000
daniel.fahner@rkfglobal.com
alex.kosyla@rkfglobal.com