**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **PABLOS CAFÉ AND BAR LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 24-cv-1770** |
| | ) | |
| **v.** | ) | **Judge Jeffrey I. Cummings** |
| | ) | |
| **THE VILLAGE OF DOLTON, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Pablos Café and Bar, LLC ("Pablos") brings this action pursuant to 42 U.S.C. §1983 against the Village of Dolton (the "Village"), Tiffany Henyard ("Henyard") in her capacity as the then-Mayor of the Village, and Lewis Lacey ("Lacey") in his capacity as the (former) Deputy Chief of Police for the Village (collectively, "defendants"). In its Second Amended Complaint, Pablos brings claims for violations of its due process and First Amendment rights arising from defendants' allegedly improper revocation of Pablos' liquor and business licenses. Defendants have moved to dismiss Pablos' claims pursuant to Rule 12(b)(6) for failure to state a claim. (Dckt. ##87, 89). For the reasons set forth below, the Court grants in part, and denies in part, defendants' motions to dismiss.

## I. BACKGROUND[1]

Pablos is a bar and restaurant in Dolton, Illinois. (Dckt. #85 ¶4). At all relevant times, defendant Tiffany Henyard was the Mayor of the Village and the Local Liquor Control

---

[1] The following facts are taken from Pablos' second amended complaint, (Dckt. #85), and the documents attached thereto. *See Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) ("[A] court may consider, in addition to the allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice.").

Commissioner, and defendant Lewis Lacey was the Deputy Chief of the Village of Dolton Police Department. (*Id.* ¶¶6–8). The Board of Trustees for the Village "is a governing body responsible for making decisions and setting policies at the local level regarding budgeting, local ordinances, licensing, land use planning, and overall community development, among others." (*Id.* ¶9).

In April 2023, Pablos timely filed a renewal of its liquor license and business license. (*Id.* ¶19). The deadline for renewal expired without action from the Village, and a Pablos employee, George Mseeh ("Mseeh") diligently followed up, only to receive false assurances at Henyard's direction and no warning that there was an issue with the renewals. (*Id.* ¶22).

On July 5, 2023, Dolton police shut Pablos down for not having a liquor license. (*Id.* ¶¶29–31). After the closure, Mseeh asked about the status of the licenses at each Village Board meeting, and Henyard falsely stated that the renewals were pending and would be issued once the Village's internal process was complete. (*Id.* ¶¶41–60). Ultimately, the bar remained closed from July 5, 2023 through October 3, 2023, when a Dolton police official advised that Pablos could remain open while awaiting its hearing. (*Id.* ¶¶38–39). According to Pablos, Henyard has a practice of non-renewing, or moving to revoke, licenses belonging to rivals and to others who do not support her—including Pablos, which did not donate to her mayoral campaign. (*Id.* ¶76–77). Instead, Henyard seeks to use the limited number of available licenses for her own benefit or the benefit of her associates. (*Id.* ¶82).

On September 23, 2023, while the bar was still closed, Pablos appealed the closure to the Illinois Liquor Control Commission. On November 2, 2023, Pablos was served with Notices of Hearing relating to its liquor and business licenses. (*Id.* ¶¶65–69). They contained identical—and exaggerated—charges to revoke or non-renew Pablos' licenses. (*Id.* ¶¶70–73, 84). On

January 26, 2024, an administrative hearing was held on the charges. (*Id.* ¶97). Thereafter, the hearing officer issued identical recommendations to revoke Pablos' licenses. (*Id.* ¶¶107–08; Dckt. ##85-4, 84-5). Pablos alleges that the hearing was polluted by conflicts of interest and other defects, and that the recommendations mischaracterize testimony and make unsound credibility determinations. (Dckt. #85 ¶¶111–18).

On February 19, 2024, Dolton police officers were watching Pablos from a parking lot across the street. (*Id.* ¶124). The same day, the local FOX News station visited Pablos to inquire about allegations that its licenses were being held up for political reasons. (*Id.* ¶125). That night, "FOX Chicago broke the story that agents from the Federal Bureau of Investigation have questioned at least a half dozen people, including business owners, a former Dolton employee, and an elected official as part of an investigation into Henyard." (*Id.* ¶126). "On February 20, 2024, the same FOX Chicago reporter drove to visit [Pablos] again and was followed there" by Dolton police officers, including Lacey. (*Id.* ¶¶127–28). Lacey gave Mseeh a "Findings of Fact and Order" signed by Henyard. (*Id.* ¶128; Dckt. #85-6). It adopted and attached the hearing officer's recommendation and "revoked and non-renewed" Pablos' liquor license. (Dckt. #85-6).

In its second amended complaint, Pablos brings claims pursuant to 42 U.S.C. §1983 against all defendants for violation of its due process rights (Count I) and for First Amendment retaliation (Count II), and it asserts *Monell* liability against the Village based on *Monell v. Department of Social Services*, 436 U.S. 658 (1978), (Count III). Pablos seeks damages and a declaratory order rather than injunctive relief. (Dckt. #85 at ¶182). Defendants now seek to dismiss the second amended complaint for failure to state a claim under Rule 12(b)(6).

## II. LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell. Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility requires a plaintiff to "go beyond mere speculation or conjecture." *Wertymer v. Walmart, Inc.*, 142 F.4th 491, 495 (7th Cir. 2025). The complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A complaint that satisfies this standard is 'well-pleaded' and may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable." *Berk v. Choy*, 607 U.S. 187, 193 (2026) (cleaned up); *Orr v. Shicker*, 147 F.4th 734, 740 (7th Cir. 2025) (recognizing that the "notice-pleading standard is deliberately undemanding.") (cleaned up). As such, the Federal Rules require "no more than a statement of the claim" without the pleading of evidence to support it, *Berk*, 607 U.S. at 193.

When considering a motion to dismiss under Rule 12(b)(6), the Court "constru[es] the complaint in the light most favorable to the plaintiffs and accept[s] all well-pleaded factual allegations as true." *Horist v. Sudler & Co.*, 941 F.3d 274, 278 (7th Cir. 2019); *Esco v. City of Chicago*, 107 F.4th 673, 678 (7th Cir. 2024). "[T]he burden of persuasion lies with the moving party . . . to show entitlement to dismissal." *Teva Pharm. USA, Inc. v. Eli Lilly & Co.*, 181 F.4tth 756, 767 (7th Cir. 2026) (cleaned up). Moreover, the Court is required to draw all reasonable inferences in favor of plaintiff, and it cannot draw inferences in favor of the moving defendants. *See, e.g.*, *Teva*, 181 F.4th at 767–68 (reversing Rule 12(b)(6) dismissal where the district court improperly drew inferences against the plaintiff and in favor of the defendant). And, in opposing a Rule 12(b)(6) motion, a plaintiff is free to "elaborate on his factual allegations so long as the

new elaborations are consistent with the pleadings." *Peterson v. Wexford Health Sources, Inc.*, 986 F.3d 746, 752 n.2 (7th Cir. 2021) (cleaned up).

## III. ANALYSIS

Defendants move to dismiss Pablos' claims, arguing that (1) Pablos has failed to plead municipal liability under *Monell*; (2) even if Pablos has pled a *Monell* claim, its claims against Henyard and Lacey in their official capacity should be dismissed as redundant; (3) Pablos has failed to state a claim for violation of its due process rights; and (4) Pablos has failed to state a claim for violation of its First Amendment rights. The Court addresses each argument in turn.

### A. Pablos Has Plausibly Pleaded *Monell* Liability Under a "Widespread Practice or Custom" Theory

As the Court explained in its prior Opinion on the Village's motion to dismiss, (Dckt. #84), there is no respondeat superior liability for municipalities under 42 U.S.C. §1983. *Ruiz-Cortez v. City of Chicago*, 931 F.3d 592, 598 (7th Cir. 2019). Instead, a municipality may be liable for a Section 1983 violation only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Spiegel v. McClintic*, 916 F.3d 611, 617 (7th Cir. 2019) (citing *Monell*, 436 U.S. at 694). To state a claim under *Monell*, a plaintiff must plead facts that plausibly suggest that: (1) it was deprived of a constitutional right; (2) the deprivation can be traced "to some municipal action (i.e., 'a policy or custom'), such that the challenged conduct is properly attributable to the municipality itself"; (3) "the policy or custom demonstrates municipal fault, i.e., deliberate indifference"; and (4) "the municipal action was the moving force behind the federal-rights violation." *Thomas v. Neenah Joint Sch. Dist.*, 74 F.4th 521, 524 (7th Cir. 2023), *quoting Spiegel*, 916 F.3d at 617.

A plaintiff can demonstrate municipal action (i.e., a policy or custom) in one of three ways: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Spiegel*, 916 F.3d at 617; *Gonzalez v. McHenry Cnty., Ill.*, 40 F.4th 824, 829 (7th Cir. 2022).

Here, Pablos maintains that it has stated a claim for *Monell* liability under an express policy theory, a final policymaker theory, *and* a widespread practice or custom theory, while defendants argue that none of Pablos' paths to *Monell* liability are viable. For the following reasons, the Court finds that Pablos has stated a claim under a widespread practice or custom theory and, as such, it need not reach the other theories of liability. *See Signal Funding, LLC v. Sugar Felsenthal Grais & Helsinger LLP*, 136 F.4th 718, 724 (7th Cir. 2025) ("Where a plaintiff states a plausible claim for relief under one discernable legal theory, we start and end there.") (cleaned up); *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015) ("A motion to dismiss under Rule 12(b)(6) doesn't permit piecemeal dismissals of *parts* of claims.").

To prevail on a widespread custom or practice theory, "[t]here must be some evidence demonstrating that there is a policy at issue rather than a random event or even a short series of random events." *Bridges v. Dart*, 950 F.3d 476, 479 (7th Cir. 2020) (citing *Thomas v. Cook Cnty. Sheriff's Dep't.*, 604 F.3d 293, 311 (7th Cir. 2010)). Although the Seventh Circuit "has not adopted any 'bright-line rules' defining a widespread practice or custom, [it has] acknowledged that the frequency of conduct necessary to impose *Monell* liability must be more than three." *Hildreth v. Butler*, 960 F.3d 420, 427 (7th Cir. 2020). The incidents "do not need to be identical," but "need to be similar to the situation at hand," and "[t]he greater the dissimilarity,

the greater the skepticism that there is a single actionable municipal practice or custom." *Hamilton v. Oswego Cmty. Unit Sch. Dist. 308*, No. 20 C 0292, 2021 WL 767619, at *10 (N.D.Ill. Feb. 26, 2021).

Pablos alleges that its constitutional deprivations were caused by the Village's widespread practices or customs, namely delegating licensing authority to Henyard and ratifying her misuse of authority, leaving renewal applications pending unless approved by Henyard, and "maintaining a pattern or practice of using licensing powers to retaliate against political opponents and suppress protected speech." (Dckt. ##85 ¶191; 92 at 5). Notwithstanding these alleged practices or customs, defendants retort that Pablos points only to its own experiences, that the alleged bad acts are solely attributable to Henyard and therefore do not reflect a pattern of wrongdoing from the Village, and that Pablos is mounting an untenable and contradictory argument that the Village acted contrary to its policies. (Dckt. #88 at 5–6). None of defendants' arguments are persuasive.

First, contrary to defendants' assertions, Pablos has *not* merely pointed to its own experiences. Rather, Pablos has satisfied the requirements of *Monell* by pointing to three similar cases involving other plaintiffs, as well as to events at a city council meeting. Specifically:

- Pablos points to *Wilma's Food Group Inc. d/b/a Wilma's Famous BBQ v. Henyard, et al.*, Case No. 25 cv 4432 (N.D.Ill.). *Wilma's* is based on similar facts involving Henyard's refusal to renew liquor and business licenses for political reasons. *See Wilma's Food Grp. d/b/a Wilma's Famous BBQ, et al. v. Vill. of Dolton et al.*, No. 25 CV 4432, 2026 WL 2065210, at *1 (N.D.Ill. July 16, 2026).

- Pablos also points to *Lacey's Place, LLC v. Village of Dolton, et.al.*, 2023 CH 07019 (Cook County, Chancery Division). The complaint in *Lacey's Place* alleges that "the underlying reason for the Village's refusal to renew Lacey's Place's liquor license is due to [Henyard's] refusal to renew licenses to establishments who did not support or contribute to her political campaign." (Verified Complaint for Declaratory and Injunctive Relief filed July 31, 2023, at ¶12).

- Additionally, Pablos points to *TAK Group Investments, LLC v. Henyard, et al.*, Case No. 2024 CH 9044 (Cook County, Chancery Division). *TAK* involves allegations that Henyard refused to authorize a liquor license and transfer an existing license for arbitrary personal or political reasons. (Complaint for Mandamus filed September 26, 2024, at ¶¶14–19).

- Finally, Pablos has alleged that Dolton residents spoke out at a city council meeting, stating "that Henyard repeatedly harassed them for not supporting her, revoked their business licenses, and used the police force to do her bidding." (Dckt. #85 ¶147).

In addition, the public docket from the Northern District of Illinois reveals several additional cases with similar allegations against defendants. *See Williams v. Vill. of Dolton*, No. 23-CV-5670, 2024 WL 621660, at *1 (N.D.Ill. Feb. 14, 2024) (bringing a First Amendment retaliation claim against Henyard, Lacey, and the Village); *Williams v. Vill. of Dolton*, No. 24 C 2128, 2026 WL 622407, at *1 (N.D.Ill. Mar. 5, 2026) ("In her retaliatory discharge claim, Williams claimed that she refused to comply with unlawful orders from Mayor Henyard, who ordered employees . . . to withhold permits from certain businesses."); *Big Woods BBQ LLC v. Moore*, No. 24 CV 11776, 2025 WL 1755727, at *1 (N.D.Ill. June 25, 2025) (bringing allegations against Henyard and the Village of Dolton involving revocation of a business license for political reasons); *Woods v. Vill. of Dolton*, No. 24-CV-11776, 2026 WL 146012, at *1 (N.D.Ill. Jan. 20, 2026) (same); *see also Palay v. United States*, 349 F.3d 418, 425 (7th Cir. 2003) ("[I]n resolving a motion to dismiss, the district court is entitled to take judicial notice of matters in the public record.").

Second, defendants do not cite any cases to support the proposition that more than one bad actor in a municipality is needed to plausibly allege *Monell* liability under a pattern or practice theory. The Court has been unable to find any. Rather than focusing on how many *individuals* caused the harm, case law in this circuit focuses on the number of similar *instances*

of the harm, and plaintiff has satisfied that requirement. *See, e.g.*, *Hildreth*, 960 F.3d at 427 ("[T]he frequency of conduct necessary to impose *Monell* liability must be more than three.").

Third, contrary to defendants' position, a municipality can have an unconstitutional widespread policy or practice occurring on the ground even in the face of a written rule stating otherwise. *Bridges*, 950 F.3d at 479 ("A policy or custom need not have received formal approval through official decisionmaking channels."); *Mundo v. City of Chicago*, No. 20 C 2562, 2023 WL 3568592, at *11 (N.D.Ill. May 18, 2023) ("As noted above, Mundo has offered ample evidence that would permit a reasonable jury to conclude that the City was aware of a pattern of allowing its members to sexually harass and discriminate against gay and gender-nonconforming people, notwithstanding its written policies to the contrary.").

For all of these reasons, Pablos has stated a plausible claim under *Monell* and defendants' motion to dismiss the *Monell* claim is denied.

### B. The Official Capacity Claims Against Individual Defendants Are Duplicative of the *Monell* Claim Against the Village and Are Dismissed

Next, Henyard and Lacey argue that the official capacity claims against them should be dismissed because they are duplicative of the *Monell* claims against the municipality. (Dckt. #90). Pablos resists this conclusion, arguing that it is not necessary to dismiss these official capacity claims as duplicative at this phase because they could be dismissed later, or addressed through an election of remedies approach. But there is ample authority that supports dismissing claims at this juncture against individuals in their official capacity when a *Monell* claim against the municipality is also brought. *See, e.g.*, *Weingardt v. Proviso Area for Exceptional Child. PAEC 803*, No. 25 CV 12441, 2026 WL 2350668, at *3 (N.D.Ill. Aug. 13, 2026) (dismissing claim against official sued in his official capacity as redundant) (citing *Malhotra v. Univ. of Ill.*

*at Urbana-Champaign*, 77 F.4th 532, 535 n.2 (7th Cir. 2023) and *Budd v. Motley*, 711 F.3d 840, 843–44 (7th Cir. 2013)). Pablos' cited case law does not compel the opposite conclusion. Accordingly, the Court dismisses the official capacity claims against the individual defendants.

**C. Pablos Has Stated a Claim for Violation of Its Due Process Rights**

"'To state a claim for a procedural due process violation, a plaintiff must demonstrate (1) a cognizable property interest; (2) a deprivation of that property interest; and (3) a denial of due process.'" *Anna's Cafe Place LLC v. Vill. of Westchester*, No. 25-2019, 2026 WL 1452564, at *2 (7th Cir. May 22, 2026), *quoting Manistee Apartments, LLC v. City of Chicago*, 844 F.3d 630, 633 (7th Cir. 2016). If the deprivation of property plaintiff suffered was based on "random and unauthorized acts," then the plaintiff is entitled only to "a meaningful post-deprivation remedy," rather than pre-deprivation notice and a hearing. *LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 944 (7th Cir. 2010); *see also Parratt v. Taylor,* 451 U.S. 527, 541 (1981). But "[t]his court has held squarely that a complaint asserting municipal liability under *Monell* by definition states a claim to which *Parratt* is inapposite." *Bradley v. Vill. of Univ. Park, Illinois*, 929 F.3d 875, 879 (7th Cir. 2019) (cleaned up). Accordingly, "[i]n cases alleging due process violations by municipal policymakers, there is no need to inquire separately into whether an employee's actions were 'random and unauthorized.'" (*Id.*).

Here, defendants argue that Pablos has no property interest in a business license; that only post-deprivation remedies are relevant because Henyard's actions were "random and unauthorized;" and that post-deprivation remedies were sufficient. In response, Pablos argues that it *has* been deprived of a property interest; that Henyard's actions were not random and unauthorized; that both pre- and post-deprivation process is relevant; and that its remedies were not sufficient. Because Pablos has plausibly pleaded *Monell* liability, the defendants' actions

should not be considered "random and unauthorized," and so post-deprivation remedies are not determinative.[2] Accordingly, the Court addresses only the issue of whether Pablos was deprived of a property right.

A plaintiff may have a protected property right in a business license if governmental officials cannot simply grant or deny it at their discretion and an ordinance provides substantive criteria dictating its issuance. *Price v. City of Chicago*, No. 25 C 791, 2026 WL 636746, at *5 (N.D.Ill. Mar. 6, 2026). "If the claimed injury is the revocation or non-renewal of a license, the plaintiff must point to a source of law that creates a 'system of nondiscretionary rules governing revocation or renewal of that benefit.'" *Id.* (citing *Chicago United Indus., Ltd. v. City of Chicago*, 669 F.3d 847, 851 (7th Cir. 2012)).

To begin, as defendants correctly note, Pablos has not pleaded that granting or denying a *business* license is nondiscretionary in Dolton. *See Isom v. Vill. of Dolton*, No. 24 CV 3236, 2025 WL 2696577, at *3 (N.D.Ill. Sept. 22, 2025) ("Isom has included no allegations that Dolton ordinances or Illinois law require defendants to issue him a business license—the complaint does not cite any relevant state or local laws."). Instead, Pablos' central argument relating to the business license is that revoking, or refusing to renew, a business license is indirectly a revocation or refusal to renew a liquor license. (Dckt. ##85 at 23; 92 at 10). But the Court need not tackle that argument, as Pablos *has* alleged that defendants also separately nonrenewed and revoked the *liquor* license. Where, as here, it is undisputed by the parties and clear under relevant authority that a liquor license constitutes a protected property interest in this context,

[2] Even assuming defendants are correct that allegations of a biased tribunal should be analyzed under the "random and unauthorized" framework, (Dckt. #88 at 9), this would apply only to Pablos' arguments about the January 26 hearing, and the Court does not dismiss parts of claims at the motion to dismiss phase. *See, e.g.*, *BBL, Inc.*, 809 F.3d at 325. Furthermore, the cases defendants cite here predate the Seventh Circuit's 2023 restatement in *Bradley* that the "random and unauthorized" doctrine does not apply in the *Monell* context. *Bradley v. Vill. of Univ. Park, Illinois*, 59 F.4th 887, 894 (7th Cir. 2023).

Pablos has sufficiently stated a claim for violation of its due process rights, and the Court need not reach the parties' remaining arguments. *See Anna's Cafe Place LLC*, 2026 WL 1452564, at *3 ("An existing Illinois liquor license can indeed be property for the purpose of the Fourteenth Amendment, and that property right can extend to an application for renewal of an existing license in certain situations."); *Brunson v. Murray*, 843 F.3d 698, 713 (7th Cir. 2016) (agreeing that "an Illinois liquor license is a property interest within the meaning of the due process clause"); *Signal Funding*, 136 F.4th at 724 ("Where a plaintiff states a plausible claim for relief under one discernable legal theory, we start and end there.") (cleaned up).

Accordingly, defendants' motion to dismiss Pablos' due process claim is denied.

### D. Pablos Has Stated a Claim for Violation of Its First Amendment Rights

To prevail on a First Amendment retaliation claim, Pablos must show that (1) it engaged in activity protected by the First Amendment; (2) it suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in defendants' decision to take the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). Defendants challenge only the first and third elements.

Pablos has plausibly pleaded that protected speech occurred. Indeed, defendants do not dispute that, if Pablos in fact "[spoke] out against Henyard to Fox Chicago on February 19, 2024," (Dckt. #85 at 26), such speech was protected. Instead, defendants simply contest whether Pablos in fact spoke negatively to Fox Chicago about Henyard on that date, writing that "[t]he mere presence of a television news station at Plaintiff's property is not First Amendment protected speech." (Dckt. #88 at 11). However, this contradicts Pablos' express statement that such speech occurred, (Dckt. #85 at 26), and Pablos' facts must be taken as true at this procedural juncture.

Pablos has also plausibly pleaded that its protected speech was at least a motivating factor for defendants' actions. In particular, when the deprivation is sufficiently "close on the heels" to the protected conduct, suspicious timing alone can demonstrate that protected conduct known of by the defendant was a motivating factor for the deprivation. *Lawrence v. Thornton Twp.*, No. 24 CV 05054, 2025 WL 1234119, at *3 (N.D.Ill. Apr. 29, 2025) ("Despite defendants' assertions to the contrary, suspicious timing, even alone, can form the basis of a first amendment retaliation claim when the retaliatory conduct follows 'close on the heels' of constitutionally protected conduct known to the individual alleged to have taken the adverse action at issue."). "While there is no set rule, the Seventh Circuit typically allows 'no more than a few days to elapse between the protected activity and the adverse action.'" *Henry's on Main, LLC v. Vill. of Rochester*, No. 24-CV-3040, 2024 WL 4507344, at *6 (C.D.Ill. Oct. 16, 2024). As in *Henry's*, "[h]ere, Plaintiff's protected speech occurred within 'no more than a few days' of the adverse action," thus satisfying this element. *Id*. Indeed, Pablos has plausibly alleged causation through proximity in time and direct police involvement immediately following press activity.

Defendants' counterarguments are unpersuasive. First, defendants contend that the speech—if it occurred—was not a motivating factor because the ultimate revocation was simply the last step in a process already underway long before the revocation. Yet reading the facts in the light most favorable to Pablos, the Court finds that it has stated a claim. The hearing officer issued only a recommendation, and the facts read in Pablos' favor plausibly give rise to the inference that Pablos' speech changed how defendants acted on that recommendation. Second, defendants argue that "[t]here are no allegations that FOX Chicago televised or reported on statements made by anyone affiliated with Plaintiff such that any named Defendants could have the knowledge necessary to motivate retaliation." (Dckt. #88 at 11). Yet the Court finds the fact

that Dolton police officers watched as members of the press arrived at Pablos sufficiently demonstrates adequate knowledge to motivate retaliation, particularly at the motion to dismiss phase where ambiguities are read in the plaintiff's favor. *See, e.g.*, *Curtis v. Bembenek*, 48 F.3d 281, 283 (7th Cir. 1995).[3]

For these reasons, plaintiff has stated a claim for violation of its rights under the First Amendment.

**CONCLUSION**

For the foregoing reasons, the Court grants in part and denies in part the defendants' motions to dismiss. (Dckt. ##87, 89). Defendants' motions are granted solely to the extent that the official capacity claims against Henyard and Lacey are dismissed, and the motions are otherwise denied. The Village shall file its answer to the second amended complaint on or before October 21, 2026.

**Date:** September 30, 2026

**Jeffrey I. Cummings**
**United States District Court Judge**

[3] Defendants also argue that Pablos' statements are contradictory in that Pablos claims there was no hearing in front of the Liquor Control Commissioner but also claims there was a hearing on January 26, 2024. (Dckt. #88 at 11). Pablos is clear, however, that the January 26 hearing was in front of someone other than the Liquor Control Commissioner, so there is no contradiction. In any event, if there were a contradiction, it would not mean that Pablos has failed to plead a plausible First Amendment retaliation claim.